## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**MALIK O'SHUN RICHARDSON, Individually and as**
**Personal Representative on Behalf of the**
**Wrongful Death Beneficiary of MICHAEL O'SHUN RICHARDSON**          **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO.** __3:22-cv-41-DPJ-FKB__

**HINDS COUNTY, MISSISSIPPI, and**
**and JOHN AND JANE DOES 1 – 100**                                   **DEFENDANTS**

### PLAINTIFF'S ORIGINAL COMPLAINT

#### *Jury Trial Demanded*

1.      This complaint is brought by Malik O'Shun Richardson (hereinafter, "Plaintiff"), Individually and as Personal Representative on Behalf of the Wrongful Death Beneficiary of Michael O'Shun Richardson, (hereinafter, "Decedent"), by and through undersigned counsel, against Hinds County and John and Jane Does 1-100, (hereinafter, "Defendants".)

### JURISDICTION AND VENUE

2.      Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C.§1983 as well as the 8th and 14th Amendments to the United States Constitution.

3.      Venue is appropriate in this Court as all acts and/or omissions occurred in Hinds County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

### PARTIES

4.      Plaintiff, Malik O'Shun Richardson, is an adult resident citizen of Hinds County, Mississippi.  His current residence is 315 Vicksburg Street. Edwards, Mississippi 39066, Hinds

County, Mississippi.  Plaintiff brings this action individually and on behalf of the only heir/wrongful death beneficiary of Decedent.

5.      Decedent was, at all times material to this Complaint, an adult incarcerated at the Hinds County Detention Center (hereinafter, "HCDC").  Substantial acts, omissions, and events that caused the Decedent's death took place in Hinds County, Mississippi.  At the time of the incident which gives rise to this Complaint, Decedent was a 41-year-old citizen of the State of Mississippi and a pre-trial detainee incarcerated at HCDC.  Plaintiff, as Personal Representative, brings this action pursuant to Mississippi Code Ann. § 11-7-13 (1972), the Wrongful Death Statute.

6.      Defendant, Hinds County, Mississippi, is located within the Southern District of the United States District Court, Northern Division.  Hinds County, by and through the Office of the Hinds County Sheriff's Department, manages and operates the HCDC. Hinds County has the responsibility for providing humane care and treatment consistent with all constitutional and American Correctional Association standards.  Defendant is subject to the in personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Hinds County Chancery Court Clerk, Eddie Jean Carr, who also serves as the Clerk of the Hinds County Board of Supervisors, located at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Hinds County, Mississippi 39201. Hinds County officials and policymakers knew that the HCDC was understaffed with untrained officers as early as August 2013 when Dr. James Austin conducted his inspection of the jail.  Throughout the following years, numerous teams of independent experts have continued to note the jail is not adequately staffed, that the jailers are not properly trained, and that the inmates are not being protected from violence at the hands of other inmates.

7.      Plaintiff is ignorant as to the identities of Defendant John and Jane Does 1-100 who

are unknown officers, employees, agents, and or servants of the Hinds County Sheriff's Department and/or Defendants. Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Griffin' damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendants herein, and were at all times acting under color of law with the permission and consent of Defendant within the course and scope of their employment.

## FACTS

8.     On or about, October 9, 2021, the Decedent was arrested for possession of a firearm by a felon. The Decedent was brought to HDCD and booked. On October 18, 2021, approximately nine days later, the Decedent was found unresponsive in POD A at the Raymond Detention Center, after suffering an assault by several other detainees, As a result of the assault, the decedent died.

9.     The HCDC is compromised of the three pods; A, B and C. Each pod has one guard tower and four (4) housing units numbered 1, 2, 3 and 4. Historically, each housing unit had one floor officer assigned. As shown below, every independent expert that has visited the jail since 2013 has opined that one floor officer per separate housing unit is inadequate to protect inmates from violence. Regardless, for months, if not years, prior to the Decedent's death, Hinds County and John Does failed to have *any* correctional officers assigned to the housing units. The inmates were left unsupervised and essentially, they policed the housing units as they saw fit.

10.     As noted in previous litigation and the expert reports, the locking mechanisms on the cell doors at the HCDC do not function. This results in the inmates being out of their cells, 24 hours a day, unsupervised and left to their own devices. Further, HCDC jailers failed to conduct

routine safety checks to ensure that inmates are safe.

11.     The following facts are taken from the Court Appointed Monitor's Interim Report filed on October 28, 2021, which is attached as Exhibit "A". On October 18, 2021, the Decedent was housed in Housing Unit A-4 where the doors do not lock and there is minimal staff supervision. As has been reported, sometimes there is only an officer in the control room with no officers assigned to the housing units. At about 0430 or 0500 in the morning, video footage showed the Decedent being hit in the head by another inmate. A third inmate then stomped on his head several times. He was then dragged across the mezzanine. The video footage shows brief movement by the Decedent and then none indicating that he was probably dead at that point, but a time of death has not been established. He was eventually dragged back and propped in a sitting position and then later laid on a mat. He was not discovered by officers until 1:45 p.m., almost 9 hours later. This was despite the fact that breakfast and lunch was served and well-being checks were supposedly being made. Medical was called and arrived 6 minutes later. They did not perform CPR. The documents provided to the monitors do not have a time when the ambulance was called but it was called. In addition to the question as to how he could not have been discovered for nine hours, there is the additional question of why this activity was not observed on camera from the control room. The minimal incident reports provided on this death identify the incident as "Medical Report-injury" instead of assault raising additional cause for concern regarding the accuracy of reporting.

13.     Hinds County officials, including the Board of Supervisors and the policy makers, have long been aware of the dangerous, violent and poor conditions at the HCDC.  Representatives from the Hinds County Sheriff's Department have regularly advised the Hinds County Board of Supervisors ("Board") about the problems at the jail and have requested that the problems be

4

addressed.  In response to numerous repeated incidents of violence and inmate uprisings that have occurred at HCDC within a three-year span of time, as well as the public outcry and media attention garnered by said incidents, the Hinds County Circuit Court entered an Order on July 23, 2013, mandating that the Hinds County Grand Jury perform an intensive and in-depth evaluation of the conditions of the Detention Center, and make its recommendations to the Court as to its findings.

14.     On September 17, 2013, the Report of the Hinds County Grand Jury was filed with the Circuit Clerk of the First Judicial District of Hinds County, wherein it determined that "the Hinds County Detention Center (HCDC) is in deplorable condition and inadequately staffed.  In its present state, the HCDC poses major security risks to inmates, staff of the facility, visitors to the facility, and to the citizens of Hinds County.  The facility also poses a major liability risk to Hinds County."  The Report adopted the Assessment Report generated by Dr. James Austin, Ph. D, his sixteen (16) page Report prepared at the request of the Grand Jury documented numerous egregious and emergent issues in existence at the Detention Center warranting immediate correction.  *See* Report of Hinds County Grand Jury attached hereto and incorporated herein by reference as Exhibit "B".  Despite the Grand Jury Order, compliance by Hinds County officials was minimal, at best.

15.     In response to an egregious number of serious incidents that have occurred in recent years at the HCDC (many of which having taken place after the Grand Jury's Report) that have not only resulted in serious physical harm (including death) to both staff and inmates, but undue property damages, financial loss and the denial of inmates constitutional rights, the United States Department of Justice's Civil Rights Division ("DOJ") instituted an in-depth investigation into the facility and its' conditions.  On May 21, 2015, the DOJ released its findings, pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997.  The twenty-nine (29) page Report

(hereinafter, "DOJ Report") concludes that the HCDC is in violation of the Eighth and Fourteenth Amendments of the United States Constitution, outlining therein a pattern and practice of Constitutional violations and mandating the immediate implementation of very specific remedial measures. *See* Report attached hereto and incorporated herein by reference as Exhibit "C".

16.     As a result of the DOJ report, Hinds County entered into a Consent Decree on June 23, 2016, with the DOJ a copy of which is attached as Exhibit "D". Hinds County agreed to, *inter alia,* develop policies and procedures to protect inmates from harm, hire sufficient numbers of jailers and provide training and supervision over these jailers to ensure that inmates are protected from harm. The court appointed a group of experts and assigned them to make periodic visits to the jail to ensure Hinds County was complying with the consent decree.

17.     During the course of monitoring the consent decree the court held numerous hearings, both in person and telephonically. Hinds County officials were present for several of these hearings. During the hearings, one of the court appointed experts would present summary testimony concerning the most recent onsite visits. As a result of attending the hearings, Hinds County and officials had first-hand knowledge prior to the Decedent's death, about the unconstitutional conditions of confinement at the HCDC.

18.     In 2021, conditions remained poor at HCDC, if not worse. The Court Appointed Monitoring Report filed on July 27, 2021, which is attached as Exhibit "E", shows that the already low staffing numbers had continued. The jail did not have enough staff to operate as a direct supervision jail. This was deemed the only way to regain control of the jail. Instead, the monitors noted that staffing was so low that Housing Unit A routinely had one jailer stationed in the control room responsible for supervising all four (4) pods. The monitors noted the following: "There have been literally as many incidents in C-Pod (supposedly direct supervision) as in A-Pod (which is

6

known to be woefully understaffed) (e.g. in May there were 27 incident reports for A-Pod and 27 incident reports for C-Pod). No one works inside the housing units there and, as was noted in several incident reports, the only staff member in A- Pod is the Control Room Office….Meanwhile, A-Pod continues to be an unmanageable housing area. Inmates are not supervised. According to the Lieutenant in charge of Booking (and Classification), "Some have developed their own committee system in which they choose who is accepted into their unit." Maintenance issues are completely unacceptable in this pod. As has been reported numerous times previously, rather than fix damaged cells, the County has simply welded some cell doors shut. Inmates are still able to fill those cells with trash through the broken door windows, thus turning them into unsanitary "trash dumpster cells" which serve as a breeding ground for vermin."

19.     In response to Hinds County's systemic failure to bring the jail up to minimum constitutional standards, District Judge Carlton Reeves filed a Show Cause Order against the County demanding the County to show why it should not be held in contempt. A hearing on the motion has been scheduled for February 14, 2022.

**1983 CAUSES OF ACTION:**
**EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS:**
**PROTECTION FROM HARM AND DANGEROUS CONDITIONS OF CONFINEMENT**

20.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 22 hereinabove.  Hinds County, acting by and through its elected and appointed officials, acted with deliberate indifference in the allegations listed above. The Plaintiff incorporates herein all reports attached as Exhibits A-E discussing the conditions of the HCDC and that these conditions have caused and/or contributed to the Decedent's death.

21.     Defendant Hinds County and Doe Defendants 1-100 in their individual and official capacities, established customs, policies and procedures which directly and proximately caused

the deprivation of the Decedent's constitutional rights as alleged herein.   Defendants were deliberately indifferent to the safety of the Decedent and other inmates housed at the HCDC.  As a result of these policies, the Defendants failed to protect the Decedent and created unconstitutional conditions of confinement.

22.     Such unwritten policies, customs and practices include, but are not limited to the following:

a.      inadequate and improper training, supervision and discipline of corrections officers;

b.      inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who practice, condone or use excessive force upon inmates, including the Decedent, in violation of their constitutional rights.

c.      inadequate and improper procedures, policies and practices for investigating improper activities by officers either through offender complaints of misconduct or through internally-initiated complaints or investigations.

d.      inadequate or improper procedures, policies and practices for identifying and taking appropriate action against officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary actions, through a positive or early warning system designed to prevent the violation of inmates' rights.

e.      officers condoning and allowing inmates to fight;

f.      failing to protect inmates from harm;

g.      failing to prevent incidents of violence about which Hinds County employees had warning;

h.      failure to properly classify inmates;

i.      failure to have a protective custody system;

j.      maintaining a jail with inadequate security, such as properly locking cell doors and knowingly allowing inmates access to materials which they then turned into "shanks";

k.      failing to address the smuggling of contraband into the facility

l.      the chronic understaffing at the jail and hiring jailers with little to no training or supervision.

m.      Failing to conduct shakedowns to recover contraband.

n.      Failing to conduct safety checks in housing unties or having officers assigned to housing units.

23.     By exhibiting deliberate indifference to the substantial risk of harm the Decedent faced as a result of Hinds County's policies and practices set forth above, which resulted in him suffering from the excessive use of force and failure to protect the Decedent from harm, ultimately resulting in his death, the Defendants, Hinds County and Doe Defendants 1-100, violated the Decedent's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

## EPISODIC ACTS OR OMISSIONS

24.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 26 hereinabove.

25.      As demonstrated in the DOJ Reports and other expert findings contained in Exhibits A-F, Hinds County maintained and operated a jail in such a manner as to cause the pervasive deprivation of inmates' constitutional rights in every respect and at every level.  The Deceased was forced to live in this jail and endure the action and inaction of its officials, as well as the jailers and jail staff acting in accordance with jail policies, customs and practices, under color of law, exhibiting callous and deliberate indifference, in depriving him of his rights guaranteed under the Constitution and laws of the United States.

26.     Hinds County, Doe Defendants 1-100, as well as jailers and jail staff acting pursuant to jail policy, practice and customs, created and required inmates to live in a jail that was

deficient in so many respects that it was not suitable for human confinement. These actions resulted in the infliction of punishment on each of the inmates who were forced to live there, including the Decedent.

27.     As shown hereinabove, Hinds County and/or other Doe Defendants adopted, implemented and permitted many other policies, practices and customs that deprived most, if not all, inmates, including the Decedent, of their right to be protected from harm and their right not to be punished during their pretrial confinement. These included policies, customs and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented the final policymaker of the HCDC. They also included policies, practices and customs which, though possibly not formally adopted, had become so widespread, well-settled and deeply imbedded in their application, use, employment and acceptance in the jail to have become the policies of these Defendants.

28.     The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated, pervasive and persistent deprivations of inmates' rights to be protected from harm under both the Eighth and Fourteenth Amendments at the HCDC. The Decedent was brutally assaulted by inmates due to the Defendant's unconstitutional policies, practices and customs.

29.     Jailers and jail staff, including the Doe Defendants, acted, or failed to act, in accordance with the official policies, customs and practices of Hinds County, or at the direction of and with the approval of these officials, in depriving the Decedent of his rights as described herein. The policies, practices and customs were moving forces in the action and inaction for jailers, and jail staff, and these jailers and jail staff acted with deliberate indifference to the rights, welfare and medical needs of and other constitutional rights of the Decedent.

30.     The deprivation of the Decedent's rights by Defendants, as described herein, directly and proximately caused Decedent to suffer excruciating pain, extraordinary mental and emotional pain and anguish, and ultimately death.

31.     Plaintiff seeks recovery of all compensatory damages to which the heirs are entitled.  Plaintiff further seeks recovery of punitive damages from the individual Doe Defendants named herein (all in their individual capacities,) for the conduct in callous and reckless disregard for the rights, welfare and needs of the Decedent.

## RATIFICATION

32.     Hinds County, its policymakers and the Doe Defendants 1-100 were advised about the Hinds County incident involving the Decedent. Hinds County, by and through its policymakers, ignored evidence of widespread disregard of policies and procedures intended for the protection of inmates including the Decedent, and systemic deficiencies that violated the Decedent's constitutional rights. Based on information and belief, not one officer, supervisor, or any other person was disciplined, considered for discipline, or even retrained on policies intended for the protection of inmates. Instead, the policymakers approved the actions of the jailers and therefore ratified those actions.

33.     Through these acts and omissions of ratification, Hinds County's policymakers were deliberately indifferent to the Decedent's constitutional rights as set forth herein. A plaintiff can establish a municipal liability claim by showing that a final municipal policymaker approved an investigation that was "so inadequate as to constitute a ratification" of the misconduct. *Wright v. City of Canton*, 138 F. Supp.2d 955, 966 (N.D. Ohio 2001). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127

(1988). An isolated decision by a municipal official that is not intended to control future decisions can nonetheless give rise to municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Hinds County ratified its employees' conduct and is therefore liable for the Decedent's death.

## PUNITIVE DAMAGES

34.     The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 36 hereinabove.

35.     Doe Defendants 1-100 acted in complete disregard for the safety of the Decedent by acting in a manner as previously described herein.  Doe Defendants 1-100 actions, in their individual capacity, warrant punitive damages in order to deter similar conduct in the future.

## PRAYER FOR RELIEF

The Plaintiff, Malik O'Shun Richardson, respectfully prays for the following relief:

A.      Compensatory damages of, from and against the Defendants, in amount to be determined by this Court.

B.      Punitive damages of, from and against the Doe Defendants 1-100 in their individual capacity in an amount to be determined by this Court.

C.      Payment of medical and burial expenses.

D.      Reasonable attorney's fees and all costs of this court.

E.      Pre and post judgment interest.

F.      Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 28th day of January 2022.

MALIK O'SHUN RICHARDSON, PLAINTIFF

BY:     /s/ Charles R. Mullins
        CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi  39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
chuckm@coxwelllaw.com

**Attorney for Plaintiff**